IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN M. MASER, ROBERT MASER, and SUSAN MASER, | ) ) ) | FILED: MAY 13, 2009 09CV2925 |
| Plaintiffs, | ) ) | JUDGE DARRAH MAGISTRATE JUDGE ASHMAN |
| v. | ) ) | CH |
| NATIONAL ENTERPRISE SYSTEMS, INC., an Ohio corporation, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs Kevin M. Maser, Robert Maser, and Susan Maser, by their attorneys, DiTommaso ♦ Lubin, PC and Shanfield Law Firm, Ltd., bring this Complaint to secure redress for the unlawful conduct of defendant National Enterprise Systems, Inc. ("NES"), in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and state law:

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Kevin M. Maser is an individual residing in Sycamore, Illinois.

2.  Plaintiff Kevin Maser is a consumer within the meaning of the FDCPA in that the alleged debt at issue is a credit card bill incurred for personal, family, or household purposes, specifically a Chase Bank credit card.

3.  Plaintiffs Robert Maser and Susan Maser are individuals residing in McHenry, Illinois.

4.  Robert and Susan are husband and wife and jointly liable for paying charges on the Capital One credit card Mrs. Maser was fraudulently induced by NES to use to pay Kevin Maser's alleged $9,971.57 Chase Bank debt. Robert and Susan are Kevin's parents.

5. Defendant NES is an Ohio corporation that maintains a registered agent for accepting service of process at 208 South LaSalle Street, Chicago, Illinois.

6. Defendant NES is a debt collector within the meaning of 15 U.S.C. § 1692a(6) because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7. This Court has federal question subject matter jurisdiction over Plaintiff Kevin Maser's federal claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiff Kevin Maser's state law claims pursuant to 28 U.S.C. § 1367, in that such claims arise from the same common nucleus of operative fact as his federal claims. All claims brought herein arise from Defendant's attempts to collect a debt from Kevin Maser.

9. This Court has pendant party jurisdiction over Plaintiff Robert Maser and Susan Maser's state law claims pursuant to 28 U.S.C. § 1367, in that such claims arise from the same common nucleus of operative fact as Plaintiff Kevin Maser's federal claims. All claims brought herein arise from Defendant's attempts to collect a debt from Plaintiff Kevin Maser.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts and transactions giving rise to this claim occurred, in substantial part, in this district.

**MATTERS COMMON TO ALL CLAIMS**

11. On May 5, 2008, Kevin received a voicemail on his cellular telephone from a representative of NES calling herself Heather who requested that Plaintiff return her call.

12. NES encourages its employees to use false names known in the debt collection industry as "desk names." "Heather" may be the desk name of an unknown NES employee.

13. In her voicemail to Kevin, Heather failed to identify that she was calling from National Enterprise Systems.

14. Kevin returned Heather's telephone call that day. This was NES' initial communication with Kevin.

15. In the telephone call, Heather demanded immediate payment of $9,971.57 for an alleged debt to Chase Bank or Kevin would be sued the next day.

16. Kevin advised Heather that he was at work, that he was not permitted to take calls of this nature at work, and that therefore he was not able to attend to the alleged Chase Bank debt while he was at work.

17. Kevin also advised Heather that $9,9971.57 was a lot of money to him and that he could not pay the entire alleged debt immediately.

18. Heather responded that she would need to transfer Kevin to a "specialist" in order to "read you your rights."

19. Heather stated and that if Kevin disconnected the call he would be sued immediately.

20. "Heather's" statement that a "specialist" would "read you your rights" was calculated to intimidate, harass, scare, and oppress Kevin into making or arranging immediate payment of nearly $10,000.

21. Heather transferred Kevin's call to a person who identified himself as Albert Johnson.

22. Consistent with its policy of encouraging its employees to use false names known in the debt collection industry as "desk names," "Albert Johnson" may be the desk name of an unknown NES employee.

23. Albert Johnson demanded immediate payment of $9,971.57 for an alleged debt to Chase Bank or Kevin would be sued the next day.

24. Albert Johnson threatened that a judgment would be entered against Kevin the next day if Plaintiff did not pay the alleged Chase Bank debt.

25. Kevin repeated that he was at work and was therefore unable to address Albert Johnson's demands.

26. Albert Johnson repeated that Kevin Maser must either pay the alleged Chase Bank debt or be sued the next day.

27. Albert Johnson asked Kevin if he had any family or friends that could pay the alleged Chase Bank debt for him.

28. Kevin responded that $9,971.57 was too much money to ask for and that he did not believe he could get the help Albert Johnson suggested.

29. Albert Johnson threatened that NES would sue Kevin the next day and a judgment would be entered against him if he did not have someone else pay the alleged Chase Bank debt for him.

30. Albert Johnson represented to Kevin that a judgment could never get removed from Kevin's credit history, even by bankruptcy.

31. Albert Johnson threatened that if Kevin did not immediately pay the alleged Chase Bank debt NES would contact Kevin's employer's human resources department and begin garnishing Kevin's wages immediately.

32. Albert Johnson represented to Kevin that Johnson was looking at Kevin's parents' credit reports and that they had enough available credit to pay the alleged Chase Bank debt.

33. NES never accessed Robert or Susan's credit reports.

34. Albert Johnson was lying to Kevin about accessing his parents' credit reports, filing a lawsuit, taking a judgment, contacting his employer's human resources department, and garnishing Kevin's wages in order to induce Kevin to make immediate arrangements for the alleged Chase Bank debt to get paid.

35. Kevin put Albert Johnson on hold and frantically called his mother, Susan Maser, from another line on his office phone.

36. Kevin explained to Susan that NES was going to sue him the next day, take a judgment against him, and garnish his wages if Kevin, Susan or his father, Robert, did not pay the alleged Chase Bank debt immediately.

37. Kevin was extremely scared and concerned he could lose his job if NES carried out any of its threats.

38. Susan Maser was reluctant to agree to pay nearly $10,000 without speaking to the person making the threats that caused Kevin to call her in the first place; Kevin used his office phone to add Susan Maser into the telephone call with Albert Johnson.

39. Albert Johnson represented to Kevin and Susan Maser that Kevin was "in judgment" and that if Kevin or Susan did not immediately pay $9,971.57, NES would sue Kevin the next day.

40. Albert Johnson represented to Kevin and Susan that the judgment NES would take against Kevin would be for far more than the alleged $9,971.57 debt, including as much as $5,000 in lawyer fees, court costs, and finance charges, including 33% daily interest.

41. Albert Johnson represented that Kevin may lose his job because most employers do not like when employees owe large amounts of money and have their wages garnished.

42. Albert Johnson represented that NES would ruin Kevin's credit "immensely" and get him in "big trouble."

43. Albert Johnson represented that if Susan loved her son she would pay his debt immediately to spare him the trouble NES would cause.

44. Susan was uncomfortable making the decision to charge nearly $10,000 on her credit card so she informed Albert that she wished to call her husband to discuss matters.

45. Albert Johnson stated to Susan that he did not have time for her and Robert to make up their minds and that he had to go.

46. Albert Johnson stated that if the telephone call was terminated by Kevin, Kevin would be sued the next day, and that the debt needed to be paid immediately.

47. Susan pleaded that she and her husband be permitted overnight to decide whether to pay Kevin's alleged $9,971.57 debt.

48. Albert Johnson represented that NES policy was to only give one telephone call to attempt to settle debts and that if Kevin hung up, NES would sue Kevin the next day.

49. Susan was so upset by Albert Johnson's threats and false sense of urgency that she was in tears as she again pleaded for time to contact her husband.

50. Albert Johnson relented and allowed Susan a moment to contact Robert, directing Susan to hurry her call because she and Kevin had already wasted a lot of Albert Johnson's time.

51. Susan then terminated the call with Albert Johnson, leaving her son on the line, so she could call her husband.

52. While she was discussing the alleged debt with Robert, Kevin called Susan to inform her that Albert Johnson was continuing to threaten to terminate the call if Kevin or Susan did not pay the alleged debt immediately.

53. Susan terminated her call with her husband in order to call Kevin at his office and get conferenced into the call with Albert Johnson to request a little more time to discuss the situation with her husband.

54. Albert Johnson represented to Kevin and Susan that Kevin was "in judgment," that NES would add as much as $5,000 in lawyer fees, court costs, and finance charges to the alleged debt, that NES would start garnishing Kevin's wages, and that Kevin might lose his job.

55. Susan pleaded that, given the magnitude of the decision, she and her husband should have a chance overnight to decide whether to pay the alleged $9,971.57 debt.

56. Albert Johnson relented and allowed Susan a moment to contact Robert, directing Susan to hurry her call.

57. Susan contacted Robert again and relayed the sense of urgency created by Albert Johnson's threats and demands for immediate payment.

58. After speaking with Robert, Susan returned to the conference call with Albert Johnson and Kevin. Susan attempted to confirm that NES would discontinue all collection activity, including suing Kevin, taking a judgment against him, communicating with his employer, and garnishing his wages, if Robert and Susan paid the alleged debt on Kevin's behalf.

59. Susan and Robert Maser paid $9,971.57 in full satisfaction of Kevin's alleged debt under duress based on Albert Johnson's false threats that if the alleged $9,971.57 debt was not paid immediately NES would: (a) sue Kevin the next day; (b) take a judgment for as much as $5,000 in excess of the alleged $9,971.57 debt; (c) communicate with Kevin's employer; (d) interfere with and place Kevin's job in danger; and (d) immediately start garnishing Kevin's wages. They also paid the debt based on Albert Johnson's misrepresentation that Kevin could not discharge the alleged debt in bankruptcy and could only get rid of it by paying it immediately

and due to the false sense of urgency Albert Johnson created with his false threats and misrepresentations.

60. The telephone calls detailed last approximately 2 hours.

61. To date, Kevin has not received any correspondence from NES, including correspondence stating his rights under 15 U.S.C. § 1692g.

## NES' PATTERN OF SIMILAR MISCONDUCT WARRANTS SUBSTANTIAL PUNITIVE DAMAGES

62. NES has and at all relevant times had a pattern of engaging in and training its employees to engage in the deceptive and unfair conduct described herein in order to induce prompt payment of alleged debts by consumers, including but not limited to:

    a. Communicating with or threatening to communicate with third parties with respect to the private business of alleged debtors;

    b. Referring to nonexistent lawsuits, garnishment proceedings, and civil judgments in communications with debtors and third parties;

    c. Implying that a consumer has committed a criminal act in not paying NES and using language calculated to shame, harass, oppress, and scare debtors;

    d. Threatening to file or continue nonexistent lawsuits or garnishment proceedings in communications with debtors and third parties; and

    e. Making false entries in collection notes documenting its collection efforts in order to interfere with and impede lawsuits that may be subsequently filed seeking relief for its deceptive and unfair conduct.

63. NES has been sued by consumers in actions arising under the FDCPA and other consumer protection laws more than 200 times since January 2007 based on allegations of similar misconduct as alleged herein.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT
### (On behalf of Kevin Maser)

64. Plaintiff Kevin Maser incorporates paragraphs 1 through 63.

65. NES violated 15 U.S.C. § 1692c(a)(3) by continuing its collection calls for hours after having been informed by Kevin that he was not permitted to take such calls at work.

66. NES violated 15 U.S.C. § 1692d(6) by failing to meaningfully identify itself in telephone calls to Kevin's cell phone.

67. NES violated 15 U.S.C. § 1692e(2)(b) and 1692(e8) by falsely threatening to add over $5,000 in lawyer fees, court costs, and finance charges to the alleged debt.

68. NES violated 15 U.S.C. § 1692e(4) by representing that it would garnish Kevin's wages even though it did not have a judgment creating any legal right to do so.

69. NES violated 15 U.S.C. § 1692e(5) by falsely threatening to take legal action that had neither the intention nor ability to take, including garnishing Kevin's wages and suing Kevin to collect the alleged debt.

70. NES violated 15 U.S.C. § 1692e(8) by threatening to add over $5,000 in lawyer fees, court costs, and finance charges to the alleged debt and disclosing false credit information to Susan Maser.

71. NES violated 15 U.S.C. § 1692e(10) by making numerous misrepresentations of fact as alleged herein and using deceptive means in an attempt to collect the alleged debt from Kevin, including but not limited to lying to Kevin about accessing his parents' credit reports in order to intimidate Kevin into making arrangements for them to pay his alleged debt.

72. NES violated 15 U.S.C. § 1692f(1) by threatening to add over $5,000 in lawyer fees, court costs, and finance charges to the alleged debt, including charging 33% daily interest.

73. NES failed to provide the notice required by 15 U.S.C. § 1692g(a) and overshadowed Kevin's rights under Section 1692g by demanding that Kevin pay the alleged debt immediately or be sued the next day.

74. As a direct and proximate result of NES' violations, Kevin has suffered anxiety, emotional distress, fear, humiliation, frustration, and feelings of anguish.

WHEREFORE, Kevin Maser requests that the Court enter judgment in favor of Plaintiff Kevin Maser and against Defendant National Enterprise Systems, Inc. for:

   a. Actual damages in an amount to be proven at trial;

   b. Statutory damages under 15 U.S.C. § 1692k.

   c. Attorneys' fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k; and

   d. Such other and further relief as the Court deems appropriate.

### COUNT II –ILLINOIS CONSUMER FRAUD ACT
### (On behalf of Kevin Maser)

75. Plaintiff Kevin Maser incorporates paragraphs 1 through 63.

76. NES' conduct in, among other things, demanding that Kevin pay the alleged debt immediately, falsely threatening to sue and representing that NES already obtained a judgment against Kevin, misrepresenting that the judgment NES had or would obtain could never be discharged or avoided in bankruptcy except upon full payment, falsely threatening NES would garnish Kevin's wages if Kevin did not pay the alleged debt immediately, creating a false sense of urgency through these threats, lying about accessing his parents' credit reports, and falsely threatening to add substantial sums to the alleged debt if Kevin did not pay it immediately, constitute deceptive acts or practices in violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2, et seq.

77. NES intended that Kevin would rely on its deceptive conduct by being induced to pay the alleged debt or convince his parents to do so for him.

78. NES' conduct occurred in the course of trade and commerce, namely its attempts to collect an alleged consumer debt.

79. NES' conduct also constitutes unfair conduct in violation of the ICFA in that:

    a. All of the above described conduct offends the public policy of the United States as stated in the Fair Debt Collection Practices Act, and the public policy of the State of Illinois as stated in the Illinois Collection Agency Act, and the common law against engaging in such conduct;

    b. Such conduct is immoral, unethical, oppressive, and unscrupulous; and

    c. Such conduct caused Plaintiff substantial injury and is of the kind of conduct that causes substantial injury to consumers in general.

80. As a direct and proximate result of NES' deceptive and unfair conduct, Kevin has suffered anxiety, emotional distress, fear, humiliation, frustration, and feelings of anguish.

81. NES' conduct toward Kevin Maser is part of a pattern and practice of engaging in identical or very similar fraudulent, deceptive and unfair collection practices, and was committed willfully and wantonly in direct disregard for Kevin Maser's rights, warranting substantial punitive damages.

WHEREFORE, Kevin Maser requests that the Court enter judgment in favor of Plaintiff Kevin Maser and against Defendant National Enterprise Systems, Inc. for:

    a. Actual damages in an amount to be proven at trial;

    b. Punitive damages;

  c. Attorneys' fees, litigation expenses, and costs pursuant to 815 ILCS § 505/10ac; and

  d. Such other and further relief as the Court deems appropriate.

## COUNT III –ILLINOIS COLLECTION AGENCY ACT
### (On behalf of Kevin Maser)

82. Plaintiff Kevin Maser incorporates paragraphs 1 through 63.

83. NES' conduct in, among other things, demanding that Kevin pay the alleged debt immediately, falsely threatening to sue and representing that NES already obtained a judgment against Kevin, misrepresenting that the judgment NES had or would obtain could never be discharged or avoided in bankruptcy except upon full payment, falsely threatening NES would garnish Kevin's wages if Kevin did not pay the alleged debt immediately, creating a false sense of urgency through these threats, and falsely threatening to add substantial sums to the alleged debt if Kevin did not pay it immediately, constitute deceptive acts or practices in violation of the Illinois Collection Agency Act ("ICAA"), 225 ILCS § 425/9.

84. A private right of action for both compensatory and punitive damages exists for violations of the Illinois Collection Agency Act. Sherman v. Field Clinic, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

85. As a direct and proximate result of Defendant's deceptive and unfair conduct, Kevin has suffered anxiety, emotional distress, fear, humiliation, frustration, and feelings of anguish.

86. NES' conduct toward Kevin Maser is part of a pattern and practice of engaging in identical or very similar fraudulent, deceptive and unfair collection practices, and was committed willfully and wantonly in direct disregard for Kevin Maser's rights, warranting substantial punitive damages.

WHEREFORE, Kevin Maser requests that the Court enter judgment in favor of Plaintiff Kevin Maser and against Defendant National Enterprise Systems, Inc. for:

a.　Actual damages in an amount to be proven at trial;

b.　Punitive damages;

c.　Litigation expenses and costs; and

d.　Such other and further relief as the Court deems appropriate.

### COUNT IV – ILLINOIS CONSUMER FRAUD ACT
### (On behalf of Robert Maser and Susan Maser)

87.　Plaintiffs Robert Maser and Susan Maser incorporate paragraphs 1 through 63.

88.　NES' conduct in, among other things, misrepresenting that Kevin would be sued the next day if Kevin, Robert, or Susan Maser did not pay the alleged debt immediately, misrepresenting that NES already obtained a judgment against Kevin, misrepresenting that the judgment NES had or would obtain could never be discharged or avoided in bankruptcy except upon full payment, falsely threatening NES would garnish Kevin's wages if Kevin, Robert, or Susan Maser did not pay the alleged debt immediately, creating a false sense of urgency through these threats, and falsely threatening to add substantial sums to the alleged debt if Kevin, Robert, or Susan Maser did not pay it immediately, constitute deceptive acts or practices in violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2, et seq.

89.　NES intended that Robert and Susan Maser would rely on its deceptive conduct by being induced to pay the alleged debt.

90.　NES' conduct occurred in the course of trade and commerce, namely its attempts to collect an alleged consumer debt.

91.　NES' conduct also constitutes unfair conduct in violation of the ICFA in that:

      a.     All of the above described conduct offends the public policy of the United States as stated in the Fair Debt Collection Practices Act, and the public policy of the State of Illinois as stated in the Illinois Collection Agency Act, and the common law against engaging in such conduct;

      b.     Such conduct is immoral, unethical, oppressive, and unscrupulous; and

      c.     Such conduct caused Robert and Susan Maser substantial injury and is of the kind of conduct that causes substantial injury to consumers in general.

92.     As a direct and proximate result of NES' deceptive and unfair conduct, Robert and Susan Maser have actual economic damages in excess of the amount of the alleged debt, which they charged to a credit card account and upon which they pay interest and finance charges.

93.     NES' conduct toward Robert and Susan Maser is part of a pattern and practice of engaging in identical or very similar fraudulent, deceptive and unfair collection practices, and was committed willfully and wantonly in direct disregard for Robert and Susan Maser's rights, warranting substantial punitive damages.

WHEREFORE, Robert Maser and Susan Maser request that the Court enter judgment in favor of Plaintiffs Robert Maser and Susan Maser and against Defendant National Enterprise Systems, Inc. for:

      a.     Actual damages in an amount to be proven at trial;

      b.     Punitive damages;

      c.     Attorneys' fees, litigation expenses, and costs pursuant to 815 ILCS § 505/10ac; and

      d.     Such other and further relief as the Court deems appropriate.

                        KEVIN M. MASER, ROBERT MASER, and SUSAN MASER

                        _s/ Peter S. Lubin_____
                        One of their attorneys

| | |
|---|---|
| Jason G. Shanfield (No. 6275896) | Peter S. Lubin |
| SHANFIELD LAW FIRM, LTD. | Vincent L. DiTommaso |
| 833 North Hoyne Ave. | Janice L. Morrison |
| Chicago, Illinois 60622 | DITOMMASO ♦ LUBIN, PC |
| (312) 638-0819 (tel) | 17W 220 22nd Street, Suite 200 |
| | Oakbrook Terrace, Illinois 60181 |
| | (630) 333-0000 (tel) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN M. MASER, ROBERT MASER, and SUSAN MASER, ) ) ) | |
| Plaintiffs, ) ) | |
| ) | No. |
| v. ) ) | |
| NATIONAL ENTERPRISE SYSTEMS, ) INC., an Ohio corporation, ) ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand trial by jury of all claims so triable.

          KEVIN M. MASER, ROBERT MASER,
          and SUSAN MASER

          _s/ Peter S. Lubin_____
          One of their attorneys

Jason G. Shanfield (No. 6275896)　　　Peter S. Lubin
SHANFIELD LAW FIRM, LTD.　　　　　　Vincent L. DiTommaso
833 North Hoyne Ave.　　　　　　　　　Janice L. Morrison
Chicago, Illinois 60622　　　　　　　　　DITOMMASO ♦ LUBIN, PC
(312) 638-0819 (tel)　　　　　　　　　17W 220 22nd Street, Suite 200
　　　　　　　　　　　　　　　　　　　Oakbrook Terrace, Illinois 60181
　　　　　　　　　　　　　　　　　　　(630) 333-0000 (tel)

16